[No. S106503. Aug. 18, 2003.]

JARROW FORMULAS, INC., Plaintiff and Appellant, v.
SANDRA HOGAN LAMARCHE et al., Defendants and Appellants.

## Counsel

Law Offices of Neal T. Wiener, Neal T. Wiener; Patton Boggs, Steven M. Schneebaum and Kathleen J. Lester for Plaintiff and Appellant.

Law Offices of Michael J. Piuze, Michael J. Piuze; Manning & Marder, Kass, Ellrod, Ramirez and David J. Wilson for Michael J. Piuze as Amicus Curiae on behalf of Plaintiff and Appellant.

Justin M. Jacobs, Jr., as Amicus Curiae on behalf of Plaintiff and Appellant.

Robie & Matthai, Edith R. Matthai, Kyle Kveton, Natalie A. Kouyoumdjian, Marta A. Alcumbrac; Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II, Robert M. Dato and Brian P. Barrow for Defendants and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Craig C. Thompson, Edward G. Weil and Susan S. Fiering, Deputy Attorneys General, for People of the State of California, ex rel. Bill Lockyer, Attorney General, as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of James J. Moneer and James J. Moneer for Law Office of Herbert Hafif, Herbert Hafif, Greg K. Hafif, Cynthia D. Hafif, Aitken, Aitken & Cohn, Wylie Aitken, Darren Aitken, James J. Moneer and the Law Offices of James J. Moneer as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**WERDEGAR, J.**—The question presented is whether this malicious prosecution action is exempt from scrutiny under Code of Civil Procedure section 425.16 (section 425.16), the anti-SLAPP[1] statute. We conclude it is not. Accordingly, we affirm the judgment of the Court of Appeal.

## BACKGROUND

Plaintiff Jarrow Formulas, Inc. (Jarrow), a manufacturer of vitamins and nutritional supplements, engaged defendant Sandra Hogan LaMarche (individually and doing business as The Network, hereafter LaMarche), a graphic designer, to design labels for its products. A dispute arose about the ownership of certain artwork, and Jarrow sued LaMarche for rescission and fraud. Represented by defendant Mark Brutzkus, LaMarche cross-complained against Jarrow for slander of title and interference with economic advantage. Jarrow obtained a summary judgment and dismissal of the cross-complaint. After a bench trial on Jarrow's complaint, the court entered judgment in favor of LaMarche.

Subsequently, Jarrow filed this malicious prosecution action against both LaMarche and Brutzkus, alleging they had filed the cross-complaint in the prior action maliciously and without probable cause. LaMarche and Brutzkus moved to strike Jarrow's malicious prosecution complaint pursuant to section 425.16. The trial court denied the motion, stating that a malicious prosecution action is not subject to scrutiny under the anti-SLAPP statute. Defendants appealed.

The Court of Appeal reversed, holding that a malicious prosecution cause of action can be subject to section 425.16. The court further held that both LaMarche and Brutzkus had satisfied their initial burden under the anti-SLAPP statute of proving that Jarrow's malicious prosecution claim arose from acts in furtherance of their speech and petition rights (§ 425.16, subd. (b)(1)) and that Jarrow did not meet its responsive burden of establishing a probability of success on the merits. Accordingly, the Court of Appeal directed the trial court to grant the anti-SLAPP motion. We granted Jarrow's petition for review.

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation."

## DISCUSSION

Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) Since the trial court in this case denied LaMarche's anti-SLAPP motion on the ground that the statute's initial, "arising from," prong does not encompass malicious prosecution claims, it did not reach the statute's second, "probability of prevailing," prong. As noted, in reversing, the Court of Appeal ruled for defendants on both prongs.

### A. *"Arising from" prong*

Our primary task in construing a statute is to determine the Legislature's intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) Where possible, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . ." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Our anti-SLAPP jurisprudence heretofore has scrupulously honored this principle.

In *Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*), when first construing the "arising from" prong of section 425.16, we held on the basis of the statute's plain language that a defendant moving specially to strike a cause of action arising from a statement or writing made in connection with an issue under consideration in a legally authorized official proceeding need not separately demonstrate that the statement or writing concerns an issue of

public significance. (*Briggs, supra,* at p. 1109.) And in a trio of opinions issued last year, we held that the plain language of the "arising from" prong encompasses any action based on protected speech or petitioning activity as defined in the statute (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89–95 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*)), rejecting proposals that we judicially engraft the statute with requirements that defendants moving thereunder also prove the suit was intended to chill their speech (*Equilon, supra,* 29 Cal.4th at p. 58) or actually had that effect (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 75 [124 Cal.Rptr.2d 519, 52 P.3d 695]).

The Court of Appeal, in concluding that this malicious prosecution action falls within the anti-SLAPP statute's "arising from" prong, adhered to our plain language approach. As we previously have observed, "plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs, supra,* 19 Cal.4th at p. 1113.) Consistently with that observation, the Court of Appeal held that this action, which is based on allegations that LaMarche and Brutzkus maliciously and without probable cause brought and maintained a cross-complaint against Jarrow in the course of a civil lawsuit, is subject to anti-SLAPP scrutiny.

The Court of Appeal grounded its conclusion in the anti-SLAPP statute's express definition of a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) That definition, which is found in subdivision (e) of the statute, places within section 425.16's purview "any written . . . statement or writing made before a . . . judicial proceeding," "any written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body," and "any other conduct in furtherance of the exercise of the constitutional right of petition." (§ 425.16, subd. (e)(1), (2) & (4).) As the Court of Appeal noted, LaMarche was sued for filing a cross-complaint in the former municipal court and Brutzkus, her attorney, for written and oral statements he made while acting as an advocate for LaMarche in the municipal court action. Accordingly, the Court of Appeal reasoned, this action falls within the ambit of a "cause of action against a person arising from any act . . . in furtherance of the person's right of petition" (§ 425.16, subd. (b)(1)), as statutorily defined.

As a plain language matter, the Court of Appeal unquestionably was correct. Indeed, the point is not disputed. Jarrow concedes that, by its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the

judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1130–1131 [270 Cal.Rptr. 1, 791 P.2d 587].)[2] Accordingly, every Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute. (See, e.g., *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220–221 [126 Cal.Rptr.2d 608]; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087–1088 [114 Cal.Rptr.2d 825].) Courts in our sister states construing similar statues are in accord.[3]

Even while conceding the plain language point, however, Jarrow argues there is no evidence the Legislature intended that section 425.16 apply to malicious prosecution claims. Jarrow misunderstands the point and purpose of plain language interpretation. "The plain language of the statute establishes what was intended by the Legislature." (*People v. Statum* (2002) 28 Cal.4th 682, 690 [122 Cal.Rptr.2d 572, 50 P.3d 355].) " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature . . . .' " (*People v. Talibdeen* (2000) 27 Cal.4th 1151, 1154 [119 Cal.Rptr.2d 922, 46 P.3d 388].) The anti-SLAPP statute is not ambiguous with respect to whether its protection of "any act" furthering protected rights encompasses suing for malicious prosecution. As we previously have observed, "[n]othing in the statute itself categorically excludes any particular type of action from its operation." (*Navellier, supra,* 29 Cal.4th at p. 92.)

In addition to honoring the anti-SLAPP statute's plain language, the Court of Appeal's construction adheres to the express statutory command that "this section shall be construed broadly." (§ 425.16, subd. (a).) It also accords with the Legislature's specific decision not to include malicious prosecution claims in the statutory list of actions to which "[t]his section shall not apply." (§ 425.16, subd. (d) [exempting "any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor"].) The Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so. It has not done so for malicious prosecution claims.

---

[2] That the underlying action was a cross-complaint rather than an original complaint is not statutorily significant as, "[f]or purposes of this section, 'complaint' includes 'cross-complaint . . . .' " (§ 425.16, subd. (h).)

[3] See, e.g., *Morse Brothers, Inc. v. Webster* (Me. 2001) 772 A.2d 842, 849 (Maine's anti-SLAPP statute applied to action for wrongful use of civil proceedings); *McLarnon v. Jokisch* (2000) 431 Mass. 343, 347 [727 N.E.2d 813, 817]; see also Stetson, *Reforming SLAPP Reform: New York's Anti-SLAPP Statute* (1995) 70 N.Y.U. L.Rev. 1324, 1329.

"Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive." (*Equilon, supra,* 29 Cal.4th at p. 61.) Nevertheless, we may observe that available legislative history buttresses a plain language construction.[4] "Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect, inter alia, direct petitioning of the government and petition-related statements and writings—that is, 'any written or oral statement or writing made before a legislative, executive, or *judicial* proceeding' (§ 425.16, subd. (e)(1)) or 'in connection with an issue under consideration or review' *(id.,* subd. (e)(2)) by such." (*Briggs, supra,* 19 Cal.4th at p. 1120, italics added.) And as we have noted, "the Legislature's intent consistently has been to protect all direct petitioning of governmental bodies . . . including . . . courts . . . ." (*Id.* at p. 1121.)[5]

Jarrow also argues that the legislative history materials contain no evidence the Legislature ever considered applying the statute to malicious prosecution claims. Jarrow is mistaken. As amicus curiae the People point out, several documents in the relevant legislative history materials indicate that when the Legislature was considering, enacting, and amending anti-SLAPP legislation, it was aware that malicious prosecution actions may be SLAPP's.[6]

Notwithstanding the foregoing, Jarrow suggests that this court should craft for malicious prosecution claims a categorical exemption from application of the anti-SLAPP statute. Jarrow argues that applying section 425.16 to malicious prosecution claims would have essentially the same effect of denying malicious prosecution victims a remedy as would applying the litigation privilege (Civ. Code, § 47, subd. (b)); hence, for the same reasons malicious prosecution claims are exempt from application of the litigation privilege, we should exempt them from the anti-SLAPP statute. We are not persuaded.

---

[4] The anti-SLAPP statute was enacted in 1992 (Stats. 1992, ch. 726, § 2, p. 3523) and has been amended three times (see Stats. 1993, ch. 1239, § 1, p. 7106; Stats. 1997, ch. 271, § 1; Stats. 1999, ch. 960, § 1).

[5] Our past pronouncements emphasize that the right of access to courts is an aspect of the First Amendment right of petition. (See, e.g., *Pacific Gas & Electric Co. v. Bear Stearns & Co., supra,* 50 Cal.3d at p. 1133 & fn. 15; *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 335, 339 [84 Cal.Rptr.2d 425, 975 P.2d 622].)

[6] See, e.g., statement of Phillip Berry, national vice-president (legal), Sierra Club, before the Judiciary Committee of the California Senate (May 8, 1990) page 3 (citing as an example of a SLAPP a lawsuit "for alleged malicious prosecution because of the filing of a lis pendens"); Pritzker and Goldowitz, First Amendment Project/California Anti-SLAPP Project, Guarding Against the Chill: A Survival Guide for SLAPP Victims (1994) page 2 (listing as possible SLAPP's suits for "Malicious Prosecution or Abuse of Process"); Canan and Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506, 511–513 (documenting six types of SLAPP's that "appeared most frequently" in the authors' study, including "judicial process abuse").

In support of its proposal, Jarrow invokes our declaration almost 50 years ago, in *Albertson v. Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405] (*Albertson*), that "the fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." As we more recently stated, "The only exception to application of [the litigation privilege] to tort suits has been for malicious prosecution actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365].)

■ Jarrow's attempted analogy between the litigation privilege and the anti-SLAPP statute is inapt. As the Court of Appeal noted, the litigation privilege is an entirely different type of statute than section 425.16. The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 [17 Cal.Rptr.2d 828, 847 P.2d 1044]); the latter is a procedural device for screening out meritless claims (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 718 [34 Cal.Rptr.2d 898, 882 P.2d 894]).

In language the Legislature first adopted in the 1870's,[7] the litigation privilege states simply that "A privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding . . . ." (Civ. Code, § 47, subd. (b).) Section 425.16, in contrast, comprises a detailed and specific statutory scheme. Since section 425.16 neither states nor implies an exemption for malicious prosecution claims, for us judicially to impose one as Jarrow urges "would violate the foremost rule of statutory construction. When interpreting statutes, 'we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . . "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' " (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 75.)

Nor does this case present the same all-or-nothing problem as did *Albertson* and its progeny. We do not face in this case, as we did in *Albertson,* the logical necessity of choosing between the "free access to the courts" (*Albertson, supra,* 46 Cal.2d at p. 382) protected by the litigation privilege and the "redress for individual wrongs" (*ibid.*) afforded by the malicious prosecution tort. (See *ibid.,* citing Veeder, *Absolute Immunity in Defamation: Judicial*

---

[7] Code Amendments 1873–1874, chapter 612, section 11, page 184; see Comment, *Absolute Privilege and California Civil Code Section 47(2): A Need for Consistency* (1982) 14 Pacific L.J. 105, 108.

*Proceedings* (1909) 9 Colum. L.Rev. 463, 470.) Unlike the "absolute bar to relief created by the litigation privilege" (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 283 [41 Cal.Rptr.2d 220, 895 P.2d 56]), the anti-SLAPP statute requires only "a minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5 [97 Cal.Rptr.2d 179, 2 P.3d 27]).

In asserting that the anti-SLAPP statute, if applied, would have the effect of barring malicious prosecution claims, Jarrow "fall[s] prey . . . to the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct . . . ." (*Navellier, supra,* 29 Cal.4th at p. 93.) In fact, "the anti-SLAPP statute neither constitutes—nor enables courts to effect—any kind of 'immunity' . . . . When a ' "complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited" ' [citation], it is not subject to being stricken as a SLAPP." (*Ibid.*)

In sum, the litigation privilege "poses a clear bar" (*Ribas v. Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637]) to actions based on statements made in litigation. In view of that privilege's "absolute nature" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 209), it was essential in *Albertson* that we gloss the statutory language memorializing it, in light of "the policy of affording redress" for malicious prosecution, lest that remedial tort be altogether eliminated. (See *Albertson, supra,* 46 Cal.2d at p. 382.) No such imperative applies here. The anti-SLAPP statute "does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning" (*Navellier, supra,* 29 Cal.4th at p. 93); rather, "it subjects to potential dismissal only those actions in which the plaintiff cannot 'state[] and substantiate[] a legally sufficient claim.' " (*Ibid.*)

In another vein, Jarrow argues that the Legislature cannot have meant to subject malicious prosecution claims to anti-SLAPP scrutiny, because malicious prosecution is "a unique, carefully circumscribed tort with its own pre-screening" mechanisms. By "pre-screening" mechanisms, Jarrow apparently refers to the elements of the malicious prosecution tort itself, and in particular to the element of lack of probable cause. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel Co.*).) That malicious prosecution has elements and that a plaintiff must prove these in order to recover, of course, hardly makes malicious prosecution unique among torts.　　Nor does the malicious prosecution tort's utility in combating meritless and harassing litigation preclude the possibility that a particular malicious prosecution action may itself be meritless or designed to harass. To the contrary, spurious malicious

prosecution suits may, like others, "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)

Jarrow's "pre-screening" argument is logically flawed. We cannot infer from any generalized overlap in the stated legislative aims underlying section 425.16 (see *id.*, subd. (a)) and the policies we have recognized as supporting the existence of the malicious prosecution tort (see *Albertson, supra,* 46 Cal.2d at p. 382) that the Legislature could not have discerned a role for the anti-SLAPP mechanism in the malicious prosecution context. ■ Considered as devices for screening out meritless suits, the anti-SLAPP device and the lack-of-probable-cause element of malicious prosecution are perhaps similarly focused, but they are not duplicates. A malicious prosecution defendant who in fact had probable cause in the underlying action may, depending on the circumstances of the particular case, be able to obtain dismissal on that ground only after protracted and costly litigation. By contrast, section 425.16 was "based on the need to 'screen out meritless cases at an early stage.' " (*College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th at p. 718; see generally *Sheldon Appel Co., supra,* 47 Cal.3d at p. 873.) Moreover, because lack of probable cause is not the only element of a malicious prosecution claim (favorable termination of the prior action and malice also being necessary; see *Sheldon Appel Co., supra,* at p. 871), such a claim may lack merit even when the plaintiff can prove lack of probable cause.

In sum, contrary to Jarrow's implication, plausible reasons for the Legislature's having equipped malicious prosecution defendants with both weapons—the probable cause defense *and* a potential anti-SLAPP motion—against meritless attack can easily be discerned. Ultimately it appears that, in choosing comprehensive language for the anti-SLAPP statute's "arising from" prong, " '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit." ' " (*Navellier, supra,* 29 Cal.4th at pp. 92–93.) Under the remedial scheme the Legislature crafted, therefore, " 'the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights.' " (*Equilon, supra,* 29 Cal.4th at p. 60.)

In petitioning for review, Jarrow also argued that, because filing or maintaining an action without probable cause does not constitute a valid "act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution" (§ 425.16, subd. (b)(1)), malicious prosecution claims, which by definition are based on filing or maintaining actions without probable cause, should not be eligible for anti-SLAPP protection. We already have, in another context, considered and

rejected Jarrow's "validity" argument, noting it " 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.' " (*Navellier, supra,* 29 Cal.4th at p. 94.)

■ Contrary to Jarrow's suggestion, that malicious prosecution is an action based on alleged abusive activity does not entail that simply by alleging malicious prosecution a plaintiff can exempt a lawsuit from anti-SLAPP scrutiny. " 'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [its] actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' " (*Navellier, supra,* 29 Cal.4th at pp. 94–95.)[8]

Finally, Jarrow argues that affirmance will result in elimination of the malicious prosecution tort, thereby giving a "green light to parties and counsel" to bring meritless actions and rendering unscrupulous litigators and attorneys "exempt from any accountability for their acts." Not so. Neither section 425.16 itself nor anything in our anti-SLAPP jurisprudence diminishes the viability of meritorious malicious prosecution claims that may be articulated against such persons.

"The Legislature . . . has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism." (*Briggs, supra,* 19 Cal.4th at pp. 1122–1123.) "Courts deciding anti-SLAPP motions, for example, are empowered to mitigate their impact by ordering, where appropriate, 'that specified discovery be conducted notwithstanding' the motion's pendency. [Citation.] And if 'the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion.' " (*Equilon, supra,* 29 Cal.4th at p. 66.) Thus, as we repeatedly have observed, the Legislature's

---

[8] Jarrow also asserts, without explanation, that the anti-SLAPP statute comprises a "clear denial of constitutional due process." Perhaps Jarrow refers to its query in petitioning for review: "Is the malicious prosecution plaintiff's constitutional right to a jury trial improperly burdened by the anti-SLAPP statute?" In briefing the merits, Jarrow does not take up the jury trial point. In any event, we previously have considered and rejected the suggestion that the anti-SLAPP statute unduly burdens plaintiffs' access to courts. "As we recognized in *Rosenthal v. Great Western Fin. Securities Corp.* [(1996) 14 Cal.4th 394], 412, 'This court and the Courts of Appeal, noting the potential deprivation of jury trial that might result were [section 425.16 and similar] statutes construed to require the plaintiff first to *prove* the specified claim to the trial court, have instead read the statutes as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.' " (*Briggs, supra,* 19 Cal.4th at p. 1123.)

detailed anti-SLAPP scheme "ensur[es] that claims with the requisite minimal merit may proceed." (*Navellier, supra,* 29 Cal.4th at p. 94.)[9]

For all these reasons, we decline to create a categorical exemption from the anti-SLAPP statute for malicious prosecution causes of action. Accordingly, we hold that this action is not exempt from anti-SLAPP scrutiny merely because it is one for malicious prosecution. If on reflection the Legislature desires to create an exemption for malicious prosecution claims, it may easily do so. (See *Briggs, supra,* 19 Cal.4th at p. 1123 [same with respect to "public interest" limitation].)

B. *"Probability of prevailing" prong*

As mentioned earlier, if a court ruling on an anti-SLAPP motion concludes the challenged cause of action arises from protected petitioning, it then "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon, supra,* 29 Cal.4th at p. 67.) To satisfy this prong, the plaintiff must "state[] and substantiate[] a legally sufficient claim." (*Rosenthal v. Great Western Fin. Securities, supra,* 14 Cal.4th at p. 412.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*).)[10]

---

[9] Jarrow argues that applying the anti-SLAPP statute to malicious prosecution actions will particularly prejudice malicious prosecution plaintiffs because such plaintiffs will generally need discovery to establish the malice element of malicious prosecution, and discovery is available under section 425.16 only on a showing of good cause. (§ 425.16, subd. (g) [when anti-SLAPP motion is pending, court "may order that specified discovery be conducted"].) It is not our role, of course, generally to pronounce on the wisdom of legislative policy in this area. We may nevertheless observe that Jarrow does not demonstrate that it was prejudiced by a lack of discovery in this case or that the trial court abused its discretion by failing to order discovery. The Court of Appeal concluded, as a matter of law based on undisputed evidence, that the underlying action did not lack probable cause. That conclusion is not implicated by our review of the question whether section 425.16 potentially encompasses malicious prosecution causes of action.

[10] "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson, supra,* 28 Cal.4th at p. 821, citing § 425.16, subd. (b)(2).)

The Court of Appeal here ruled that Jarrow had not met its burden under the "probability of prevailing," or merits, prong of the anti-SLAPP statute.[11] In petitioning for review, Jarrow specified the question whether, assuming the anti-SLAPP statute applies, a malicious prosecution claim predicated, as this one is, on an underlying suit that was terminated on summary judgment with a finding of insufficient evidence should be deemed, as a matter of law, to satisfy the statute's merits prong. Jarrow points out that the minute order memorializing the trial court's disposal of LaMarche's cross-complaint states that "no competent evidence" of harmful activity by Jarrow or damages to LaMarche's business had been presented.[12] According to Jarrow, this "summary judgment ruling with its findings alone" should be sufficient, as a matter of law, to satisfy the anti-SLAPP statute's merits prong. We disagree.

■ The entry of summary judgment for the defense on an underlying claim on grounds of insufficient evidence does not establish as a matter of law that the litigant necessarily can "state[] and substantiate[]" (*Rosenthal v. Great Western Fin. Securities, supra,* 14 Cal.4th at p. 412) a subsequent malicious prosecution claim.

■ First, contrary to Jarrow's assertion, defense summary judgment on the underlying claim does not establish lack of probable cause as a matter of law. " 'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' " (*Sheldon Appel Co., supra,* 47 Cal.3d at p. 885, quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Accordingly, there is probable cause if, at the time the claim was filed, "any reasonable attorney would have thought the claim tenable." (*Sheldon Appel Co., supra,* at p. 886.) Plainly, a claim that appears "arguably correct" or "tenable" when filed with the court may nevertheless fail, as LaMarche's did, for reasons having to do with the sufficiency of the evidence actually adduced

---

[11] Specifically, the Court of Appeal determined that it was objectively reasonable for LaMarche and Brutzkus to conclude that plaintiff on or around October or November 1996 had contacted a prospective customer of LaMarche for the purpose of destroying her relationship with that person's business. The court concluded this made the trade libel claim legally tenable at the time the cross-complaint was filed in March 1997. The Court of Appeal thus had no occasion to decide, and expressly refrained from deciding, whether defendants had acted maliciously. (See *Sheldon Appel Co., supra,* 47 Cal.3d at p. 875 [when "the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated"].)

[12] More fully, the minute order stated there was "no competent evidence adduced that cross-defendant Jarrow Formulas, Inc. did anything that was a cause of any damage to cross-complainant Sandra Hogan LaMarche, DBA [T]he Network" or "that cross-defendant disparaged cross-complainant to Merical Distributors or that cross-defendant did anything that caused cross-complainant to fail to obtain any business from Merical or anyone else." The minute order also stated that Jarrow would recover no attorney fees or costs from LaMarche.

as the litigation unfolds.[13] As defendants point out, every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. (*Wilson, supra,* 28 Cal.4th at p. 824.) And just as an action that ultimately proves nonmeritorious may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause. (See *id.* at pp. 819–820; *Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th at p. 383.)

Second, obtaining summary judgment for the defense on the underlying claim does not necessarily establish the malice element of a subsequent malicious prosecution claim. Jarrow asserts it does in this case, "because, even after an opportunity for discovery, no competent evidence was adduced to support the underlying claim." The trial court's "no competent evidence" finding was not quite so sweeping. (See fn. 12, ante.) But even assuming Jarrow characterizes the record correctly, the asserted conclusion does not follow. "Merely because the prior action lacked legal tenability, as measured objectively . . . *without more,* would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498 [78 Cal.Rptr.2d 142], citing *Sheldon Appel Co., supra,* 47 Cal.3d at pp. 885–886.)

We therefore reject, as did the Court of Appeal, Jarrow's suggestion that its having obtained summary judgment on the cross-complaint in the underlying litigation establishes as a matter of law, for the purposes of section 425.16, the merits of its malicious prosecution claim. Nor does the record afford any other basis for our gainsaying the Court of Appeal's conclusion on this point.

---

[13] "Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must *separately* show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present[s] no probable cause." (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 382 [90 Cal.Rptr.2d 408], citing *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650 [meritless appeal is not by definition frivolous].)

## DISPOSITION

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.